**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SATEC INC.<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection<br><br>*Defendants* | Court No. 26-04535 |

**COMPLAINT**

Satec Inc., by and through its undersigned counsel, alleges the following:

1. This action concerns Defendants' collection of duties imposed pursuant to the International Emergency Economic Powers Act ("IEEPA").

2. Plaintiff is an importer of articles subject to the import duties challenged herein.

3. Beginning in February 2025, through a series of executive orders, President Trump invoked IEEPA as authority to impose broad new tariffs on goods entering the United States ("IEEPA Tariffs"). As the importer of record, Plaintiff was responsible for paying the IEEPA Tariffs on its imported goods.

4. On February 20, 2026, the Supreme Court held that IEEPA does not authorize these tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5. While the Supreme Court has ruled that the IEEPA Tariffs, and that the underlying executive orders imposing them, are unlawful, there remains a risk that importers

may not be assured refunds of the collected IEEPA Tariffs without a separate court judgment providing judicial relief. Plaintiff is therefore bringing this separate action to protect its entitlement to refunds of all of its IEEPA Tariffs.

6. With respect to all import entries for which it paid IEEPA Tariffs, Plaintiff seeks an order requiring Defendants to refund all IEEPA Tariffs that Plaintiff paid on its imports regardless of liquidation status.

**PARTIES**

7. Plaintiff Satec Inc. is a U.S. company, incorporated in New Jersey. Its importer of record number is 22-351288800.

8. Defendant the United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9. Defendant United States Customs and Border Protection ("CBP") is an agency of the United States Department of Homeland Security ("DHS"), headquartered in Washington, D.C. CBP is responsible for collecting duties and taxes on goods imported into the United States.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is named as a Defendant in his official capacity.

**JURISDICTION**

11. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See V.O.S. Selections*, 149 F.4th at 1328.

12. This Court possesses the same equitable authority as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1585, this Court can enter a money judgment against the United States and can order any other appropriate civil relief, including

declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

13. Plaintiff has standing to pursue this action because it is an importer of record for merchandise subject to the challenged IEEPA Tariffs.

14. Plaintiff has paid IEEPA Tariffs pursuant to the Executive Orders that the Supreme Court found unlawful and has suffered injury caused by those orders. Declaratory and injunctive relief from this Court would redress those injuries.

## GENERAL PLEADINGS

### I. President Trump Invoked IEEPA Authority To Impose Broad Tariffs

#### a. The IEEPA Tariffs

15. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. These orders invoked IEEPA as the statutory basis for authorizing the tariffs. Each order justified the tariffs as a response to a claimed national emergency. These are referred to as the "Fentanyl Tariff Orders."

16. Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025) ("Mexico Tariff Order") imposed an additional 25 percent tariff on imports from Mexico. The order justified the President's use of emergency powers by citing purported risks arising from increased illegal immigration and illicit drugs entering the United States and Mexico's purported failure to counter those risks.

17. Executive Order 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("Canada Tariff Order"), likewise declared an emergency in response to purported opioid drug trafficking and imposed an additional 25 percent tariff on imports from Canada, with certain exceptions.

18. Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025), also declared a national emergency due to purported opioid trafficking and imposed an additional 10 percent tariff on imports from China.

19. Four days later, on February 5, 2025, the President issued Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

20. In the following month, on March 3, 2025, the President issued Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025), raising the tariffs on imports from China to 20 percent on the basis that China had "not taken adequate steps to alleviate the illicit drug crisis."

21. On April 2, 2025, citing persistent U.S. trade deficits with other countries as a national emergency, the President issued Executive Order 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order, effective April 5, 2025, imposed a 10 percent baseline tariff on nearly all imports and, effective April 9, 2025, additional "reciprocal" tariffs on imports from 56 countries and the European Union. *Id.* at Annex I.

22. The Reciprocal Tariff Order alleged that "U.S. trading partners' economic policies . . . suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *Id.* at 15,041.

23. On April 8, 2025, the President raised the reciprocal tariff rate on imports from China from 34 percent to 84 percent, in response to Chinese retaliatory tariffs on U.S. goods. *See* Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

24. On the following day, the President suspended for 90 days the country-specific reciprocal tariffs on all countries except for China and again raised the tariff on imports from China from 84 percent to 125 percent. *See* Executive Order 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025).

25. In implementing these executive orders, the Defendant directed changes to the HTSUS, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

26. In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others. In this complaint, Plaintiff challenges only those orders that the Federal Circuit and now, the Supreme Court, found to be unlawful ("Challenged Tariff Orders").

**b. Implementation of the IEEPA Tariffs by Defendant**

27. CBP is responsible for collecting duties imposed under U.S. law, including the IEEPA Tariffs at issue. *See* 19 U.S.C. §§ 1500, 1502.

28. Congress enacted the Omnibus Trade and Competitiveness Act in 1988, which adopted the HTSUS. *See* 19 U.S.C. § 1202; Pub. L. No. 100-418, 102 Stat. 1107 (1988). Under the HTSUS framework, CBP classifies imported goods using a series of chapters, headings, and subheadings. 19 U.S.C. § 1202. The HTSUS headings cover broad categories of merchandise, and the subheadings provide specific classifications.

29. CBP regulations govern how merchandise is classified and appraised under the HTSUS. *See* 19 C.F.R. § 152.11.

30. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS in accordance with presidential orders. *See* 19 U.S.C. §§ 1202, 3005, 3006.

31. When goods enter the United States, CBP is responsible for confirming the HTSUS classification of those goods, and for assessing and collecting any applicable tariffs. *See* 19 U.S.C. §§ 1202, 1500, 1502.

**c. Liquidation**

32. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

33. When goods enter the United States, the importer of record pays estimated duties based on the declared value of the goods, the country of origin, and the HTSUS classification. *See* 19 U.S.C. § 1484.

34. CBP reviews the entry declaration and examines the goods, then finalizes the classification, value, and total duties owed. *See* 19 U.S.C. § 1500. Once the final duty amount is determined, CBP then "liquidates" the entry and notifies the importer of record as to any invoices or refunds.

35. Liquidation must happen within one year but may be extended. *See* 19 U.S.C. § 1504(a). As a matter of practice, CBP typically liquidates duties within 314 days after entry.

36. This Court has equitable power to suspend liquidation. *See*, *e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363, 1365-66 (Ct. Int'l Trade 2021). This Court has also

indicated that it has the equitable power to require that CBP reliquidate already liquidated entries. *See* paragraphs 43-45 *infra*.

37. Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the entry. 19 U.S.C. § 1514.

38. However, where CBP acts in a ministerial capacity, *i.e.*, without discretion, such as applying a duty rate, courts have held that liquidation generally cannot be protested. *See Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024); *see also Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001) ("Customs is powerless to perform any active role in the determination of the constitutionality of the assessment.").

**d. Litigation Challenging the IEEPA Tariffs**

39. On April 14, 2025, an action was filed at this Court challenging the IEEPA Tariffs. This Court found the Challenged Tariff Orders to be unlawful. *See V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). This Court's decision was subsequently affirmed by the Court of Appeals for the Federal Circuit ("Federal Circuit"). *See V.O.S. Selections*, 149 F.4th 1312.

40. The Supreme Court affirmed these holdings and found that IEEPA does not authorize tariffs. *Learning Resources*, 607 U.S. at 255.

41. Other actions have been filed with this Court alleging the same claims as those already reviewed by this Court, the Federal Circuit, and the Supreme Court.

42. On November 11, 2025, a U.S. importer filed such an action and requested this Court issue a preliminary injunction against liquidation of its IEEPA Tariffs. *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, CIT No. 25-225, ECF No. 3.

43. On December 15, 2025, this Court denied the motion for preliminary injunction, finding that plaintiffs were not at risk of irreparable harm as a result of liquidation because, as in *AGS* and in other IEEPA Tariff actions, "the Government has taken the 'unequivocal position' that 'liquidation will not affect the availability of refunds after a final decision' in V.O.S." *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025) at 8. Therefore, this Court found that Defendant would be judicially estopped from taking an approach contrary to its stated position.

44. This Court also cited its authority to order reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i) and acknowledged that plaintiffs in such cases are not required to file protests. *Id.* at 7-8.

45. Now that the Supreme Court has ruled that the Challenged Tariff Orders and IEEPA Tariffs are unlawful, Defendants are estopped from opposing the relief requested herein.

**II. IEEPA Does Not Authorize Tariffs**

46. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., the Trade Act of 1974, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as sources of authority. The Supreme Court has now held that IEEPA does not authorize the tariffs imposed through these executive orders.

**III. Plaintiff Has Paid IEEPA Tariffs Imposed By the Challenged Executive Orders**

47. As of the date of this complaint, Plaintiff has paid IEEPA Tariffs imposed by the Challenged Tariff Orders.

48. Plaintiff's imports subject to IEEPA entered the United States under the new HTSUS codes made pursuant to the Challenged Tariff Orders.

49. Plaintiff has paid the IEEPA Tariffs on its imports.

50. The imports for which Plaintiff has paid IEEPA duties have begun liquidating, with more imports scheduled for imminent liquidation.

## STATEMENT OF CLAIMS

### COUNT I: THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS*

51. Plaintiff incorporates by reference paragraphs 1-50 above.

52. The Supreme Court held in *Learning Resources* that the President exceeded his authority under the IEEPA, 50 U.S.C. § 1701 *et seq*., in issuing the Challenged Tariff Orders. In so doing, the Supreme Court concluded that IEEPA does not grant the President the power to impose tariffs. *Learning Resources*, 607 U.S. at 251 ("Our task today is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").

53. The tariffs challenged in this Complaint are the same as those struck down by the Supreme Court in *Learning Resources*. For the same reasons set forth in *V.O.S. Selections*, as affirmed by the Federal Circuit and the Supreme Court, the Challenged Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

54. Plaintiff respectfully requests this Court order the refund of all IEEPA Tariffs collected from Plaintiff, with interest as provided by law, without regard to liquidation status.

### COUNT II: DECLARATORY RELIEF

55. Plaintiff incorporates by reference paragraphs 1-54 above.

56. Federal courts have the power to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

57. Plaintiff's claims present an actual controversy concerning the President's authority to impose tariffs under IEEPA, the constitutionality of IEEPA, and CBP's authority to implement and collect the resulting duties.

58. Plaintiff has suffered injury as a result of the Challenged Tariff Orders by having to pay the IEEPA Tariffs on goods imported into the United States.

59. This Court may exercise its equitable authority to issue a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement or collect the IEEPA Tariffs as to Plaintiff.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a) Declare that CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders with respect to Plaintiff;

b) Order Defendants to refund to Plaintiff all IEEPA Tariffs collected on its imports, regardless of liquidation status, with interest as provided by law; and

c) Grant such further relief as this Court deems proper.

Respectfully submitted,

*/s/Alan G. Kashdan*
Alan G. Kashdan
Blank Rome LLP
1825 Eye Street, NW
Washington, DC 20006

*Counsel to Satec Inc.*

Dated: October 14, 2026